AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Cell phone assigned call number 347-423-9412, maintained by Sprint

)
)
)
)
)
)

Case No. 2:19-mj-868

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Sprint Cellular records for cellular phone number 347-423-9412.

located in the _____ District of _____Kansas_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A to the Affidavit in Support of the Application, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922 (a)(1)(A) | - Engage in the business of dealing in firearms without a license |
| 18 U.S.C. § 922 (a)(6) | -Non-Licensee providing false or fictitious information when buying firearms from an FFL |

The application is based on these facts:

See Affidavit in Support of the Application, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Takara Mayo, Special Agent ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11-5-2019

_____
*Judge's signature*

City and state: Columbus, OH

Elizabeth Preston Deavers, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH 347-
423-9412 THAT IS STORED AT
PREMISES CONROLLED BY SPRINT

Case No. 2:19mj-868

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Takara Mayo, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with certain accounts that are stored at premises owned, maintained,

controlled, or operated by Sprint, a wireless provider headquartered at 6480 Sprint Parkway,

Overland Park, Kansas 66251.  The information to be searched is described in the following

paragraphs and in Attachment A.  This affidavit is made in support of an application for a search

warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Sprint to

disclose to the government records and other information in its possession pertaining to the

subscriber or customer associated with the accounts, including the contents of communications.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF), and have been since October 2018. As part of my training with the ATF, I

graduated from the Federal Law Enforcement Training Center Criminal Investigator School in

Glynco, Georgia.  I am also a graduate of the ATF National Academy's Special Agent Basic

Training, and have completed additional ATF Complex Investigations Training.  During my time

as a law enforcement officer, I have participated in numerous investigations that have resulted in

the execution of state and federal search warrants and arrest warrants; the seizure of firearms,

narcotics, and related contraband. Based upon my experience, persons involved in crimes commonly carry and maintain cellular telephones for communication purposes, and commonly use their cellular telephones as a method of communication prior to, during, and after the commission of crimes.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922 (a)(1)(A) (engage in the business of dealing in firearms without a license) and/or 18 U.S.C. § 922 (a)(6) (Non-Licensee providing false or fictitious information when buying firearms from an FFL) have been committed by Lisa JORDAN. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits, such as location history, records of communication with individuals that would have purchased firearms, of these crimes further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated."

2

## PROBABLE CAUSE

6.    On September 9, 2019, Lisa JORDAN purchased five (5) firearms, using cash, from Buy Here Sell Here, located at 2344 East 5th Avenue, Columbus, OH. The firearms she purchased from Buy Here Sell Here includes the following: Hi Point manufactured, C9 model, 9mm caliber, semi- automatic pistols, bearing serial number P1394030, for $107.50, Hi Point manufactured, C9 model, 9mm caliber, semi- automatic pistols, bearing serial number P1465808, for $107.50, Hi Point manufactured, C9 model, 9mm caliber, semi- automatic pistols, bearing serial number P1984342, for $107.50, Hi Point manufactured, C9 model, 9mm caliber, semi-automatic pistols, bearing serial number P1482044, for $107.50, and an Iberia Firearms manufactured, JC model, .40 caliber, semi-automatic pistol, bearing serial number 125966, for $118.50. On the same day, Lisa JORDAN also purchased seven (7) firearms from Lev's Pawn Shop, located at 3446 East Main Street, Columbus, OH. The firearms she purchased from Lev's Pawn Shop included the following: two (2) Haskell manufactured, JHP model, .45 caliber, semi-automatic pistols, bearing serial numbers X4329016, and X451747 for $93.02 each, one (1) Hi Point manufactured, C9 model, 9mm caliber, semi- automatic pistols, bearing serial number P217698, for $93.02, one (1) German Sports Guns manufactured, Firefly model, .22 caliber, semi-automatic pistol bearing serial number F127769, for $158.14, one (1) Haskell manufactured, JH model, .45 caliber, semi-automatic pistol bearing serial number 344637, for $93.02, one (1) Lorcin Engineering manufactured, L9 model, 9mm caliber, semi-automatic pistol, bearing serial number L088138, for $111.63 and one (1) Hi Point manufactured, CF380 model, .380 caliber, semi-automatic pistol, bearing serial number P779283, for $93.02. According to the Pawn Broker at Lev's Pawn Shop, JORDAN told him that she needed the firearms because her family owned a gun range and they needed the firearms to rent out to

3

people when they came in to shoot. On Monday, September 9, 2019, Eric Delbert, Executive

Officer at L.E.P.D. Firearms, Range and Training Facility, contacted ATF Task Force Officer

(TFO) Samuel Chappell because JORDAN came into his store to purchase multiple firearms for

an upcoming trip to the range. He stated JORDAN purchased a one day range pass and provided

an address of 3553 Rand Court, Apt. A, Columbus, OH. He further stated she inquired about

purchasing three (3) firearms and could only spend $160 on each of them. Mr. Delbert also stated

she picked out three (3) low quality firearms without much inspection of any of them. On

September 27, 2019, JORDAN purchased one (1) Hi Point manufactured, 995 model, 9mm

caliber, rifle, bearing serial number F148516, for $260.00, from Lev's Pawn Shop. On

November 1, 2019, Special Agent (SA) Takara Mayo conducted an interview of Lisa JORDAN

to verify that she was still in possession of the thirteen (13) firearms. JORDAN told investigators

that she no longer had the twelve (12) firearms that she purchased on September 9, 2019, but she

was in possession of the rifle that she purchased on September 27, 2019. JORDAN told

investigators that she purchased the firearms because she wanted to be a gun collector. During

the interview, SA Mayo asked JORDAN if her family owned a gun range and stated no one in

her family owns a gun range. JORDAN told investigators she needed to sell the guns because she

did not have the money to pay her rent, and she sold the firearms to an unknown male who she

met at the Family Dollar parking lot on Livingston. SA Mayo knows that there is a Family Dollar

close to JORDAN's residence on Livingston Avenue. SA Mayo knows from her training and

experience that most individuals who purchase firearms retain them for extended periods of time,

up to years in length. SA Mayo knows that multiple firearms bought and sold a short time after

being purchase are usually indications of a straw purchase. A straw purchase can be defined as

the acquisition of a firearm(s) from a dealer by an individual ("the straw"), done for the purpose

4

of concealing the identity of the true intended receiver of the firearm(s). JORDAN told

investigators the male she sold the firearms to was a skinny black male, by the name of "Dre,"

approximately in his 30s, referring to his age, with dread locks and a beard. JORDAN told

investigators "Dre" drove a black Jeep. JORDAN later told investigators she gave the firearms to

her boyfriend (who she referred to as her husband), Richard HARRIS, and he facilitated the sale

of the firearms. SA Mayo believes JORDAN's cellular phone will contain evidence and

communication, such as text messages, multimedia messages, and/or phone calls, to help identify

"Dre" and potentially other customers who JORDAN may have sold twelve (12) firearms to, as

well as provide communications with others about the nature and purpose of JORDAN

purchasing the firearms. There was no preservation request sent.

7.      In my training and experience, I have learned that Sprint is a company that

provides cellular telephone access to the general public, and that stored electronic

communications, including retrieved and unretrieved voicemail, text, and multimedia messages

for Sprint subscribers may be located on the computers of Sprint.  Further, I am aware that

computers located at Sprint contain information and other stored electronic communications

belonging to unrelated third parties.

8.      Wireless phone providers often provide their subscribers with voicemail services.

In general, a provider will store voicemail messages on behalf of a particular subscriber until the

subscriber deletes the voicemail.  If the subscriber does not delete the message, the message may

remain in the system of Sprint for weeks or months.

9.      Among the services commonly offered by wireless phone providers is the

capacity to send short text or multimedia messages (photos, audio, or video) from one

5

subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Sprint for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

10.     Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

11.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the

6

embedded unique identifiers for a cellular device could take several different forms, including an

Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile

Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile

Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI").

When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique

identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or

tower records those identifiers as a matter of course.

12.    Many wireless providers retain information about the location in which a

particular communication was transmitted or received.  This information can include data about

which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio

signal from the cellular device and thereby transmitted or received the communication in

question.

13.    Wireless providers also maintain business records and subscriber information for

particular accounts.  This information could include the subscribers' full names and addresses,

the address to which any equipment was shipped, the date on which the account was opened, the

length of service, the types of service utilized, the ESN or other unique identifier for the cellular

device associated with the account, the subscribers' Social Security Numbers and dates of birth,

all telephone numbers and other identifiers associated with the account, and a description of the

services available to the account subscribers.  In addition, wireless providers typically generate

and retain billing records for each account, which may show all billable calls (including outgoing

digits dialed).  The providers may also have payment information for the account, including the

7

dates, times and sometimes, places, of payments and the means and source of payment
(including any credit card or bank account number).

14.     In some cases, wireless subscribers may communicate directly with a wireless
provider about issues relating to the account, such as technical problems, billing inquiries, or
complaints from other users.  Wireless providers typically retain records about such
communications, including records of contacts between the user and the provider's support
services, as well records of any actions taken by the provider or user as a result of the
communications.

15.     As explained below, information stored at the wireless provider, including that
described above, may provide crucial evidence of the "who, what, why, when, where, and how"
of the criminal conduct under investigation, thus enabling the United States to establish and
prove each element or alternatively, to exclude the innocent from further suspicion.  In my
training and experience, the data pertaining to a particular cellular device that is retained by a
wireless provider can indicate who has used or controlled the cellular device.  This "user
attribution" evidence is analogous to the search for "indicia of occupancy" while executing a
search warrant at a residence.  For example, data collected at the time of account sign-up,
information relating to account payments, and communications (and the data associated with the
foregoing, such as date and time) may indicate who used or controlled a cellular device at a
relevant time.  Further, such stored electronic data can show how and when the cellular device
and associated cellular service were accessed or used.  Such "timeline" information allows
investigators to understand the chronological context of cellular device usage, account access,
and events relating to the crime under investigation.  This "timeline" information may tend to

8

either inculpate or exculpate the cellular device owner. Additionally, information stored by the wireless provider may indicate the geographic location of the cellular device and user at a particular time (e.g., historic cell-site location information; location integrated into an image or video sent via text message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the state of mind of the cellular device's owner and/or user as it relates to the offense under investigation. For example, information relating to the cellular device in the possession of the wireless provider may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

16.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Sprint to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

17.     Based on the forgoing, I request that the Court issue the proposed search warrant.

18.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

9

19.     The government will execute this warrant by serving the warrant on Sprint. Because the warrant will be served on Sprint, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Takara Mayo
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF)

Subscribed and sworn to before me on _November 5_, 201 9

UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A

**Sprint Smart Cellular Phone**

This warrant applies to information associated with 347-423-9412 that is stored at premises owned, maintained, controlled, or operated by Sprint, a wireless provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251.

## ATTACHMENT B

### Sprint Smart Cellular Phone

## I.  Information to be disclosed by Sprint

To the extent that the information described in Attachment A is within the possession, custody, or control of Sprint, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to Sprint or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Sprint is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      All voice mail, text, and multimedia messages from September 1, 2019 to October 31, 2019 stored and presently contained in, or on behalf of the account or identifier;

b.      All existing printouts from original storage of all of the text messages described above;

c.      All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from September 1, 2019 to October 31, 2019;

d.      All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message from September 1, 2019 to October 31, 2019;

e.  All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

f.  Detailed billing records, showing all billable calls including outgoing digits, from September 1, 2019 to October 31, 2019;

g.  All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from September 1, 2019 to October 31, 2019;

h.  Incoming and outgoing telephone numbers, from September 1, 2019 to October 31, 2019;

i.  All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

j.  All records pertaining to communications between Sprint and any person regarding the account or identifier, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

2

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 922 (a)(1)(A) (engage in the business of dealing in firearms without a license) and/or 18 U.S.C. § 922 (a)(6) (Non-Licensee providing false or fictitious information when buying firearms from an FFL) involving Lisa JORDAN since September 9, 2019, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.     Communications about the sale of firearms, communications between JORDAN and Richard HARRIS, JORDAN's boyfriend, about the purchase of specific firearms to later be sold, transactions involving the sale and purchase of firearms between JORDAN and "Dre", and any preparatory steps in furtherance of the offense.

b.     Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

c.     Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

d.     Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

e.     The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

f.      The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to 18 U.S.C. § 922 (a)(1)(A) (engage in the business of dealing in firearms without a license) and/or 18 U.S.C. § 922 (a)(6) (Non-Licensee providing false or fictitious information when buying firearms from an FFL), including records that help reveal their whereabouts.

4